The next case on our oral argument calendar this morning is Dresser-Rand Company v. PDVSA Petroleo, S.A. Number 20-1990. Good morning, Your Honors. Hi, good morning. Matthew Ducharme, Associated Hogan Levels, on behalf of the Appellant Petroleo. May it please the Court. The question before the Court on this appeal is whether Petroleo has waived its impossibility defense. The answer to that question simply is no. I'd like to spend my time this morning really focusing on how any purported waiver of Petroleo's impossibility defense would be unenforceable as a matter of public policy. Now, the long way to get to the substance on that, I don't think you raised that before the District Court. I went back and looked at your opposition to the summary judgment motion. And that argument, you can correct me if I'm wrong, but it's nowhere to be found that never, ever until the motion for reconsideration was it raised with the District Court. So why didn't you waive that before the District Court? So, Your Honor, I would say that we actually did raise this issue even before the opposition. What page of your opposition to the summary judgment motion do you say, if you enforce this waiver, it will violate public policy? Tell me which page. So there's not a, we do not say that specifically in the opposition for a motion for summary judgment. I think it's implicit in the very fact that we asserted the impossibility defense is the notion that we have not waived that defense. We've all, but prior to the submitting the opposition for the motion for summary judgment in our 56D motion, asking the court to deny or defer on the motion for the motion for summary judgment in lieu of complaint. We specifically stated that defendants have not waived all of their defenses. And so for those reasons, I would say that. It was the argument is not waiving your defense, not the same as saying this would violate public policy. And in fact, the impossibility is different than illegality. So just saying impossibility wouldn't even raise the issue of illegality because I don't, you know, I don't think a state has anything. I don't think a state of any public policy interest in when a sophisticated party decide who's going to take the risk of impossibility. They worry about illegality. Right. Well, I think in this context, the illegality and possibility of sort of merge. It's impossible because it's illegal. But before I get there, I'd like to state, Your Honor, if the panel were to find that this was a completely new argument that's being raised on appeal or was raised on the motion for reconsideration. The Second Circuit has its discretion to entertain new arguments in certain circumstances. But one of those circumstances is when an argument involves a completely legal issue. And here this is a completely legal issue as to whether Petroleum has waived the impossibility of defense. And let me ask you this because I don't want to waste – I'm taking up a lot of your time on the waiver issue. But on the impossibility, we said in a case called Grumman v. Ward, and we said in other cases, where the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship. And in this waiver provision, not only is the language of the waiver provision, obviously, waiver of defense is extremely broad. But it anticipated potentially this issue in paragraph 6.03b. It says the obligation to Petroleum are not subject to any defense in some language. And then it references for any provision of applicable law and regulation purporting to prohibit payment by an obligated party of the guaranteed obligation or any part thereof. And that's exactly what we have here, a prohibition arguably, a prohibition of law that's prohibiting payment. So the parties anticipated this possibly happening. Obviously, it hadn't happened yet, and they allocated the risk. So why would we disturb that? So respectfully, Judge Bianco, I think that 6.03b, while I agree with you, it does contemplate the scenario here. It actually is contemplating it in a completely different circumstance that's inapplicable here. That provision, 6.03b, which is entitled no setoffs, is contemplating just that, that in an instance where the guarantor is unable to pay because of some government regulation, they cannot terminate the debt. The debt doesn't magically disappear just because a party is unable to pay or unable to pay because of a government regulation. But that is not what I'm going to do. It says any defense or setoff. You're ignoring the word defense there, right? So I don't think I'm ignoring it. I think I'm trying to contextualize and try to decipher what the party's intent here is within this contract. And in the actual waiver of defense provision, 6.04, there's absolutely no mention of the exact precise scenario that's discussed in 6.03 in the context of being no setoff. So to be clear, Petrolio is not asking for a setoff. It's not asking for a discharge of the debt. It's simply asking the court in defense for the motion to summary judgment that it has not violated the notice. 6.04 is very broad, too. Your client waives any defense based on arising on any defense on the enforceability of the guaranteed obligation. Obviously, it doesn't reference an issue regarding prohibition of payment, but that's pretty broad. It's broad, but I think the first phrase in 6.04 is key here. It expressly states, as the parties recognize, that there are limitations to the waiver. It says that the waiver is limited to the extent permitted by applicable law. Which stands for the proposition that you cannot waive impossibility. Where has the New York court ever said that a sophisticated party can't waive impossibility? Someone has to take on the risk when something becomes impossible. So there's no case on either direction stating whether an impossibility defense arising in this context where the impossibility is due to illegality would violate a matter of public policy. But there are many similar cases. A Wells Fargo, Judge Rakoff case that we've cited in our briefs, in a similar circumstance where the court found that liquidated damages provision rendered the debt unenforceable. And likewise, the parties then could not waive that as a defense. And so that's the same exact scenario here where, you know, the law is clear. Parties cannot contract to do something that is illegal. And to allow parties to then waive that defense would be an end run around that general proposition that you cannot contract to do illegal things. To waive it would to essentially asking the court to endorse or enforce illegal activity, which is precisely what will be happening here. This is a guarantee, right? I mean, so this is a guarantee that is being made in the face of the possibility of future sanctions. You're suggesting that it never occurred to anybody here that sanctions were a possibility in the future? Well, I think 6.03b does suggest that there'd be some government regulation that would prohibit payment. I don't think that it would be possible to envision exactly how the sanctions played out here. And I think that needs to be taken into consideration. And again, interpreting the party's intent of what this waiver provision means in the note agreement. With respect to illegality, Petroleum was permitted to ask for permission to pay, right? And even if sanctions are imposed, I understood that OFAC allows for permission to make certain payments, that there's some flexibility there. Isn't that correct? So I would say it's not completely correct, Your Honor. And I would say that that's a tribal issue of fact of whether or not that it would be possible to ask permission. OFAC does issue certain licenses. It's unclear. And it's a factual dispute as to whether a license could have been granted here that would have allowed Petroleum to actually make the payment. But the point is that the procedures allow for permission. It is not absolutely the case that under no circumstances could the guarantee be paid. Isn't that correct? Well, again, Your Honor, I was submitting that to you. I mean, even if we don't know whether a license would in fact be issued, as a legal matter, the sanction mechanism allows for that possibility. Isn't that right? It allows for that possibility, yes. But at the time, it's impossible. I know, but that's all I wanted to say. Thank you very much. You have two minutes for rebuttal. We'll hear from your opposition. Thank you, Your Honor. Good morning, Your Honors. May I begin? Please. Kim Watterson for Reed Smith here on behalf of the appellee, Dresser Rand. A lot of ground was covered during appellant's argument, so I'm not going to repeat some of the points that were made through the court's questions. But I think as Judge Bianco's and Judge Sullivan's and Judge Carney's questions as well convey, this is a case that's controlled by basic and settled principles of contract law. And when they're straightforwardly applied here, they support the decision of the district court. Guarantees are contracts. They need to be enforced like every other contract. They're enforced pursuant to the plain language of the contracts. Here, in at least four places in the provision, or in the contract, the guarantee that we discussed during appellant's argument, 6.01, 6.03, and 6.04, in at least four circumstances, there's very broad waivers. New York law endorses the enforcement of broad waivers. And many of this— Can I interrupt just for a second? I mean, clearly New York endorses broad waivers. But, I mean, what's the best case, the closest case to a situation like this one involving alleged illegality from a New York court? I think I will not pronounce the name correctly, Your Honor, but it's Compagnier. Hold on. Let me look at it. My French is not very good. But it is a case that's very, very close. Compagnier, financier. Well, that is a Second Circuit case. Cooperatif is a very close case because it's a case that emphasizes just how important it is to enforce waivers in accordance with their terms. There is no New York— Ms. Waterson, there's no New York case—maybe you'll correct me if I'm wrong. I don't think there's even a Second Circuit case that has said, even though this would be illegal under New York law, we're still going to enforce the contract. The cases say the opposite, that something is, in fact, illegal under New York law. It's against public policy to enforce it, right? Or am I missing something on that? I know Judge Connie made the point maybe there's a way of doing it where it won't be illegal. But assuming this were illegal, wouldn't it violate public policy? Well, let me take a two-step back on that because I think we all are in agreement that the waiver is broad. And broad waivers and waivers that waive the defense of illegality and impossibility are enforced. And they're enforced by New York courts. Cases where there's been, for instance, fraud in the inducement and along those lines. Let me answer Judge Connie's question. And I think this is where also we may be conflating the validity of the judgment, which construes the four corners of the contract, and determines that Petrolio owes an obligation under the guarantee contract with the separate question of whether and under what circumstances. And the trial court was well aware of the possibility that there would be circumstances where the judgment could not be satisfied immediately. And said those are enforcement questions that we will take up down the road. Yes, a license can be applied for. And in fact, in this case, a license has been applied for to permit this payment. A license by whom? Who's seeking the license? Petrolio or PDESA? Both, I believe, Your Honor. And we have as well. Okay. Go ahead. I just want to ask Ms. Wurz, let me just ask one more time. Which case says, I know you're making a distinction between being able to collect them on it versus enforcement, but to honor a contract or court to say we are going to honor this contract where the provision is illegal. I look pretty hard. I don't think there's any case ever in New York State or in the Second Circuit that has said, even though this is illegal, we are going to honor this contract. Your Honor, this is where I think I really do want to answer your question. And they do authorize and affirm contracts that waive illegality. I did see those cases, but it's a broad waiver that includes illegality. But if you look at the facts of the case, it was addressing something else besides illegality, fraud and inducement or something else. So that included illegality, but no court has ever then said, even though this is illegal, that portion of the waiver we're going to honor. Well, I'd like to make two points. The Compagnie case does deal with circumstances where someone was alleging fraud in the inducement. And let me also say that it is not illegal to enter into the guarantee. There is a sanction now that may be standing in the way of satisfaction of the judgment. The existence of the sanction is going only to the timing of the payment and when the payment can be made. It does not invalidate the underlying judgment. And the trial court was well aware of that. What Judge Stellenton was deciding was whether the guarantee was enforceable, given its broad language waiving any and all defenses. Under circumstances, quite frankly, where the breadth of the waiver provision was not even before him. Right now, there may be circumstances where payment cannot be made until the licenses are obtained. But the fact that payment can't be made now, we can't conflate that question with the question of whether under the four corners of the contract, this is a broad, unequivocal waiver of defenses, waiving any and all defenses. So I guess, Judge Bianco, what I'm doing is, and I don't mean to not accept the premise of your question, but affirmance of the judgment doesn't intrude on or interfere with the blocking sanctions. There's no directive to do something if we would consider a payment and a satisfaction of the guarantee to be something that is illegal. There is not a directive, pay and you must pay now, contrary to or intruding on the sanctions. Ms. Waterston, could you address why the same analysis didn't apply to PDVSAs in the first instance? That was very interesting, Your Honor, yes, and I'm glad you asked that. PDVSA or PDVSA, as some of my colleagues have pointed out to me, I should refer to PDVSA, did not have a waiver of defenses. So both PDVSA and Petrolio came into court and argued impossibility as a defense. The court concluded that the defense of impossibility was waived as to Petrolio, therefore, judgment could be entered against Petrolio. The defense that was invoked had been waived by Petrolio. By contrast, PDVSA had not waived an impossibility defense. So the case is moving forward with respect to PDVSA on the fact question, and I believe there's a trial scheduled for 2021 to determine on the facts, because there was a fact issue, whether the impossibility defense was, in fact, a valid defense. So the imposition of sanctions has a different effect with regard to the guarantor versus with regard to the primary obligor, PDVSA. If the sanctions were invoked as an impossibility defense, PDVSA did not waive the impossibility defense, so that is a live issue as to it. Petrolio did not waive the impossibility defense, so Judge Staunton found there was no applicable defense. The defense that had been invoked, impossibility, was not one that could be invoked by Petrolio. And Petrolio, can I interrupt? I'm sorry. Petrolio did not, while this was going on, did not say, yeah, me too for illegality, right? No, it did not, Your Honor. The groundwork in the district court was all about imposing the summary judgment. Impossibility, impossibility, impossibility. There was no argument, a second argument made by Petrolio. And even if you agree that there's an impossibility defense, as Judge Staunton said, we in our papers pounded, this was not a mystery to Petrolio, that we were arguing no impossibility defense, and even if there is an impossibility defense, Petrolio waived it. Petrolio in its summary judgment papers, as Judge Bianco was pointing out and Judge Staunton said very starkly, there was no, I'll call it secondary or tertiary argument that said, even if we, as Dresser Rand contends, waived the impossibility defense, well, they didn't take a step back first and say, as they've argued on appeal and on reconsideration, the impossibility defense doesn't apply here because we didn't know the circumstances that led to impossibility when we signed the contract. Nor did they make the public policy argument. Now, let me interrupt for just a second, though. So with regard to impossibility and illegality, though, am I correct in understanding that Petrolio, in the ordinary course, where this judgment that Judge Staunton entered to be sustained or affirmed, that in efforts to attach any assets that Petrolio has in the United States, for example, that it still might, well, or elsewhere, I guess, but in various enforcement actions that might be able to raise impossibility, the existence of sanctions, and defend against enforcement based on sanctions that have been imposed. Is that right? Yes, Your Honor, and that's a timing issue, and I'm going to read for a moment what the judge said because sometimes it's helpful. There is no dispute about the guarantor's liability. It is fully liable under the guarantee for the amount which remains unpaid, and this is in Joint Appendix 394. The court then goes on to say a separate question. Whether it is presently, and I'm underscoring presently, presently possible for the guarantor to make the payment or the satisfaction of the judgment, or whether the satisfaction of the judgment must be deferred as a matter of U.S. law, these are issues that are not presented in this motion. So, there is a judgment construing the contract establishing Petroleum's obligations under the guarantee. It will be left for another day to determine when there can be execution on that judgment, or when that judgment can be satisfied, and as Your Honor points out, there are procedures that enable one to apply for relief from the sanctions, so to speak, such that payment could be made. I think we have kept you past your time. Unless one of my colleagues has a further question, then we'll thank you for your argument. Okay. We'll hear rebuttal. Thank you. Mr. Ducharme. Thank you, Your Honors. I'll try to keep this brief. I just want to state just to be clear here, for the record, that the sanctions that apply to PETAVASA are exactly the same that apply to Petroleum. So, why didn't you make that argument in the district court? And that's what I was getting to, Your Honor. We did. When we alleged impossibility in our opposition to motion for summary judgment, not just specifically to PETAVASA, but we specifically say defendants, plural, are asserting the impossibility defense. And that's what I wanted to seek to clarify. I think that's critical. No mention of illegality, right? No mention of illegality or OFAC by Petroleum. Or am I missing something? No. In the opposition papers, we're treating defendants as the same, because we stated specifically that the sanctions apply equally to PETAVASA as they do Petroleum. They're one and the same. And so, therefore, whatever applies to one naturally applies to the other. And so the impossibility defense was asserted on behalf of both defendants. And I think that's critical here, because as Your Honors were asking my adversary, there is no case in New York where a fraud defense or illegality defense was allowed to be made. Let me ask you this, because I think this is – maybe I'm missing something on this, but enforcement versus execution, as Ms. Watterson was focusing on there, if we decided it your way, in her view, your client's bound by the contract, the execution of the judgment has issues and they'll have to be worked out. But if we were to decide it your way, let's say we were to say, okay, illegality violates public policy, this is illegal, your client wins, right? They don't have to pay the over $100 million. Suppose the sanctions are lifted in two years. Your client still wouldn't owe the money then, right? They would get a windfall of over $100 million, because right now they can't pay. Or am I missing something? Your Honor, our argument – and this is what I was trying to make the distinction in 6.03b. We're not trying to use the sanctions as a means to discharge the debt. All we're saying is we are not in default now. We should not be charged default interest now. The note should not be accelerated now. But to the extent that the sanctions are lifted and barring any other defense that the defendants may have, we do then owe the money. So let me ask again, though. What about the district court's judgment? Entering the judgment against Petrolio was illegal. I'm sorry, I don't understand the question. I'm saying I understand that there is an impossibility defense that you're making, that you didn't waive impossibility to guarantee obligations that your client undertook. But entering the judgment against Petrolio on the theory that there was no waiver of impossibility that you carried through, the entry of the judgment itself, there's no element of the entry of the judgment that has any illegality taint to it. It's that you cannot now start to perform absent a license from OFAC. And so that puts you at risk of accumulating interest or having more litigation over what assets can be used to satisfy the judgment consistent with sanctions and so on. But there's nothing that is illegal about entering the judgment or that the judgment itself puts you in violation of the law with respect to. Isn't that correct? So Judge Carney, I'm glad you asked that question because I think it raises a very important point. And I think the critical thing to think about here is that the same public policy considerations apply here. Wait a second. Wait a second. I want to understand. Is there anything illegal? Is Petrolio in violation of any law by being subject to entry of this judgment? No, but it essentially would be penalized for not breaking the law. It would be subject to a default interest rate and acceleration on the note for not breaking the law and payment. Well, of course, number one there, as we pointed out, there's a possibility of getting a license to make the repayments. And number two, absent that the dresser Rand is the one that's incurring the loss. And this contract had to do with allocation of financial responsibility. Isn't that correct? It's correct. But this is an allocation that cannot be made for public policy reasons because it puts this government regulation that no party anticipated on the back of my client Petrolio and incentivizes illegal conduct, which is against public policy. And what illegal conduct does it incentivize? It incentivizes your client to make illegal payments. Yeah, it would because otherwise is penalized for not doing so. All right. All right. All right. I think we I think we have the arguments. Thank you very much. We'll take the matter under advisement. Thank you for your time.